STATE v. W. C. NORRIS.

(Filed 28 February, 1934.)

1. **Criminal Law I j—Motion for nonsuit must be made at close of State's evidence in order for motion at close of all evidence to be considered.**

   C. S., 4643, serves the same purpose in criminal prosecutions as C. S., 567, serves in civil actions, and a motion for judgment of nonsuit under C. S., 4643, must be made at the close of the State's evidence in order for a motion thereunder made at the close of all the evidence to be considered.

2. **Intoxicating Liquor G c—**

   Evidence of defendant's guilt in this prosecution for possession of intoxicating liquor and implements for its manufacture, C. S., 3411(b), (d), *is held* sufficient, and defendant's motion as of nonsuit was correctly refused.

3. **Criminal Law F e—**

   A *nolle prosequi* in a criminal action will not support a plea of former jeopardy upon a subsequent prosecution for the same offense.

4. **Criminal Law G m—**

   The judgment of a recorder's court must be proven by the records of the court, and its record may not be impeached collaterally by parol evidence.

5. **Intoxicating Liquor G d—Evidence of defendant's guilt of possession held sufficient to support instruction in this case.**

   Uncontradicted evidence that upon the officers' showing of a search warrant to defendant, the defendant went out to feed his hogs and that other members of his family tried to dispose of or conceal intoxicating liquor and implements for its manufacture which were in the house, and that the officers found liquor and implements in the house and a rig lately fired near the house is held sufficient to support an instruction by the trial court that the jury should find defendant guilty if they believed the testimony beyond a reasonable doubt.

6. **Intoxicating Liquor B a—**

   Actual or constructive possession of intoxicating liquor is sufficient for a conviction under C. S., 3411(b).

7. **Criminal Law I j—**

   Where the uncontradicted evidence, if accepted as true, establishes defendant's guilt, the court may instruct the jury to find the defendant guilty if they believe the evidence beyond a reasonable doubt, but in crimes in which intent is an ingredient the question of intent is ordinarily for the jury.

APPEAL by defendant from *Sinclair, J.,* and a jury, at April Term, 1933, of COLUMBUS. No error.

The bill of indictment is as follows:

"The jurors for the State upon their oath present, that W. C. Norris, late of the county of Columbus, on 1 October, 1932, with force and arms, at and in the county aforesaid, did unlawfully and wilfully purchase, possess, sell, transport, intoxicating liquors or possess equipment, implements or ingredients for the purpose of manufacturing intoxicating liquors against the form of the statute in such case made and provided and against the peace and dignity of the State. KELLUM, *Solicitor*."

A true bill was found by the grand jury against the defendant. The defendant entered a plea of not guilty and a plea of former, jeopardy.

The evidence on the part of the State was as follows: H. B. Bruton testified in part: "I went there with a search warrant and found some liquor out in the field. There were three pints and some in a fruit jar; three short pints. We found it out in Mr. Norris' field. It was about as close to his house as from here to the end of the courthouse there. It was under some pea vines. I saw his wife go out in the field and hide it. She carried it from somewhere about the house. The defendant at the time was out in the field not far from the house, working, feeding his hogs. We found two cases of home brew in the chicken coop, put on two pieces over the door. The cases were like coca cola cases or bottled stuff. I reckon there were three dozen bottles to the case. I believe that's what there was. I never counted it. I believe there were three dozen to the case. That's about all I know about it. We found an old stand, a gasoline drum in the edge of the yard, wrapped up in some sacks. The sacks were not big enough to hold it; they were laid over it. I examined the drum. It had been smutted and it looked like it had been around fire, and it smelled like beer, the kind of beer they make whiskey out of. I don't remember whether or not we found any clay or mud on it about the top of it. I didn't go in the house; Mr. Watson and Mr. Stephens went in the house. I could not swear that the home brew is intoxicating. I have heard that the liquor they call home brew is intoxicating. We carried the home brew to Tabor."

N. A. Watson testified in part as follows: "I went up there with Mr. Stephens, and Mr. Stephens called Mr. Norris' attention to the search warrant he had to search his place, and he was going to feed some hogs, and he didn't go back with us and we drove the car in the yard, and his daughter run in the house, and I says, 'Boys, we will have to go now, or we won't get it,' and we went in the house and his wife run out with something in her lap, and his oldest boy taken two jugs under his arms and went across the field, and she put the liquor in the pea vines. Me and Mr. Bruton run up and we got the liquor and brought it to the house, and we found several jars and jugs in there that had had liquor in them, and we found two cases of home brew. I don't know whether there was two dozen or three dozen in the case. We did not catch the

STATE *v.* NORRIS.

boy. He run across the branch pouring the liquor out on the way, and we could smell it on the bushes. They were about half-gallon jars. The boy was a good runner, and he had a pretty good start on us. His daughter taken some sacks and throwed them over that old drum that looked to be about a thirty-gallon drum and it had clay on it, and she covered it up with some little bags, and it had four brackets and it was smutty, and there were two fifty-gallon barrels that had had mash in them, and they were muddy, and right back of the barn was a ditch that went through his field, and there was where the stuff had been poured out, or in, on Friday night and this was Saturday morning. That was the old mash. We found the place where the rig had been. There was a hole about like the size of the barrel, and the coals had been raked back in there, and they were still hot. I could not stand my hand in it, and there were some trees broke over the place to hide it. From the house the hole was about as far as that building across on the corner, fifty or seventy-five yards probably. The barn was between this hole, the ditch and the house. The field was between this hole, the ditch and the house. It was right side the ditch and there was a bridge below where the still was, or at least where it looked like it was manufactured, and he had the two empty barrels in his barn."

"The defendant offered and the State admitted in evidence judgment docket No. 4, county recorder's court, Columbus County, judgment No. 4214, which reads as follows: State *v.* W. C. and Jetty Norris, 11 October, 1932; N. P. Docketed 11 October, 1932.

The notation 'N. P.' was admitted by the State to indicate a *nolle prosequi.*"

Defendant introduced E. A. Maultsby, judge of the recorder's court, as a witness. The record is as follows: Q. "Did you try the case pending at bar now?" Mr. Kellum: "Objection." Q. "Did you try the case of State *v.* W. C. Norris and Jetty Norris?" Mr. Kellum: "Objection." Court: "That is not contradicting the record." A. "Yes, sir." Q. "Go ahead and tell just what happened at the trial?" A. "They were indicted for having whiskey still in their possession, is my recollection." Mr. Kellum: "It occurs to us that, this being a court of record, that the record would show what took place with reference to that case." Court: "Yes, sir, you can't contradict the record." Q. "Did you hear the evidence?" Mr. Kellum: "Objection." A. "Yes, sir." Q. "What disposition did you make of the case of State *v.* W. C. Norris and Jetty Norris?" Mr. Kellum: "Objection." Sustained.

At the close of all the evidence the defendant moved for a directed verdict of not guilty. Motion overruled. Defendant excepted.

The defendant moved that the jury be instructed, upon all the evidence, that as a matter of law the defendant should be discharged as

having been placed in former jeopardy in the trial in the recorder's court. Motion overruled. Defendant excepted.

Whereupon, his Honor charged the jury as follows: "(The court instructs you if you find beyond a reasonable doubt the facts as shown by the testimony of all the witnesses and the record evidence, it will be your duty to return a verdict of guilty.) If you do not believe the witnesses, you would return a verdict of not guilty."

To so much of his Honor's charge as is in brackets above the defendant excepts.

The jury returned a verdict of guilty. Judgment was rendered by the court below on the verdict. The defendant assigned errors on the above exceptions and appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*R. H. Burns & Son for defendant.*

CLARKSON, J. The first exception and assignment of error of defendant is as follows: "For that the court refused to direct the jury to return a verdict of not guilty." This exception and assignment of error cannot be sustained. C. S., 4643, is as follows: "When on the trial of any criminal action in the Superior Court, or in any criminal court, the State has produced its evidence and rested its case, the defendant may move to dismiss the action or for judgment of nonsuit. If the motion is allowed, judgment shall be entered accordingly; and such judgment shall have the force and effect of a verdict of 'not guilty' as to such defendant. If the motion is not allowed, the defendant may except; and if the defendant introduces no evidence, the case shall be submitted to the jury as in other cases, and the defendant shall have the benefit of his exception on appeal to the Supreme Court.

Nothing in this section shall prevent the defendant from introducing evidence after his motion for nonsuit has been overruled; and he may again move for judgment of nonsuit after all of the evidence in the case is concluded. If the motion is then refused, upon consideration of all the evidence, the defendant may except and, after the jury has rendered its verdict, he shall have the benefit of such latter exception on appeal to the Supreme Court. If defendant's motion for judgment of nonsuit be granted, or be sustained on appeal to the Supreme Court, it shall in all cases have the force and effect of a verdict of 'not guilty.' "

This section serves, and was intended to serve, the same purpose in criminal prosecutions as is accomplished by section 567, in civil actions. *S. v. Fulcher,* 184 N. C., 663, 769; *S. v. Sigmon,* 190 N. C., 687.

This motion of the defendant was made at the close of all the evidence. No motion of nonsuit or to dismiss under the above statute was made. We think there was plenary evidence to be submitted to the jury. The second exception and assignment of error of defendant is as follows: "The defendant moved that the jury be instructed upon all the evidence that as a matter of law, the defendant should be discharged as having been placed in former jeopardy in the trial in the recorder's court." This exception and assignment of error cannot be sustained.

In *S. v. Thornton,* 35 N. C., 256 (257-258) : "A *nolle prosequi* in criminal proceedings, is nothing but a declaration, on the part of the prosecuting officer, that he will not at that time prosecute the suit further. Its effect is to put the defendant without day—that is, he is discharged and permitted to leave the court, without entering into a recognizance to appear at any other time—1 Ch. Cr. L., 480; but it does not operate as an acquittal, for he may afterwards be again indicted for the same offense, or fresh process may be issued against him upon the same indictment, and he be tried upon it. 6 Mod., 261; 1 Sal., 21." *S. v. Smith,* 129 N. C., 546; *S. v. Faggart,* 170 N. C., 737 (744); *Wilkinson v. Wilkinson,* 159 N. C., 265.

The court below ruled out the parol evidence in regard to contradicting the record. The record judgment docket, in the county recorder's court for Columbus County is as follows: "State *v.* W. C. and Jetty Norris, 11 October, 1932. N. P. (*nolle prosequi.*)" We do not think that the record can be impeached in this collateral way under the facts and circumstances of this case by *parol* evidence.

Article 19, County Recorder's Court, C. S., 1563, is as follows: "In any county in which a municipal recorder's court may not be established under the provisions of this subchapter, or in which such court has in fact not been established in the county seat, the board of commissioners may, in their discretion, establish, in the manner provided by this article, a recorder's court for the entire county, which shall be a court of record and shall be held at the county seat."

Recorder's court for Columbus County is declared by statute, "shall be a court of record."

In *Foster v. Woodfin,* 65 N. C., 29 (30-31) : "The proceedings of a court not of record may be proved as other similar facts are. The proceedings of courts of record can be proved by their records only; this is by reason of the vagueness and uncertainty of parol proof as to such matters, and of the facility which the record affords of proving them with certainty. Public policy and convenience require the rule, and a necessary consequence from it is the absolute and undeniable presumption that the record speaks the truth. This presumption, however,

would be inconsistent with justice, if it were held to mean anything more than that the record may not be impeached collaterally."

In *Hopkins v. Crisp,* 166 N. C., 97 (99): "It is well settled that where it appears upon the face of the record that the court had acquired jurisdiction of the parties and of the subject-matter of the action, the judgment therein is valid, however irregular it may be, and it must stand until set aside in a proper proceeding by competent authority. *England v. Garner,* 90 N. C., 197; *Harrison v. Hargrove,* 120 N. C., 106."

The third exception and assignment of error of defendant is as follows: "For that the court charged the jury that if it find beyond a reasonable doubt the facts as shown by the testimony of all the witnesses and the record evidence, it would be its duty to return a verdict of guilty." We do not think this exception and assignment of error can be sustained.

N. C. Code, 1931 (Michie), section 3411(b) (Public Laws, 1923, chap. 1, sec. 1), is as follows: "No person shall manufacture, sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor except as authorized in this article; and all the provisions of this article be liberally construed to the end that the use of intoxicating liquor as beverage may be prevented. Liquor for non-beverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, and possessed, but only as provided by Title II of 'The Volstead Act,' act of Congress enacted October twenty-eighth, one thousand nine hundred and nineteen, an act supplemental to the National Prohibition Act, 'H. R., 7294,' an act of Congress approved November twenty-third, one thousand nine hundred and twenty-one."

Latter part sec. 3411(d) (Public Laws, 1923, chap. 1, sec. 4), is as follows: "It shall be unlawful to have or possess any liquor or property designated for the manufacture of liquor intended for use in violating this article, or which has been so used, and no property rights shall exist in any such liquor or property." The learned solicitor drew the bill of indictment against the defendant under the above law.

The evidence was to the effect that certain parties with a search warrant went to defendant's place. The search warrant was called to defendant's attention, as they drove the car in the yard. (1) Defendant immediately went to feed some hogs. (2) His wife ran out of the house with three pints of liquor in her lap and some in a fruit jar and hid it near the house under some pea vines. (3) The boy took some liquor and ran across the branch, pouring out the liquor which he had in half-gallon jars, as he ran. (4) His daughter took some sacks and threw them over a 30-gallon drum. (5) Two cases of home brew were found

in the chicken coop, 3 dozen bottles in the case. They found several jars and jugs in the house. There was also found two 50-gallon barrels that had mash in them. They found the place where the rig had been, the coals still hot and trees broken over the still place to hide it, this was about 50 to 75 yards from the house. Two empty barrels in the barn.

When the searchers appeared, the man went to feed his hogs, the wife ran out of the house with liquor and hid it, the boy took some and ran and spilled it as he ran. The daughter covered up the old 30-gallon drum. The scene was like a chicken hawk flying into a barn lot and the chickens scattering. We do not think the charge of the court below prejudicial. In *S. v. Meyers,* 190 N. C., 239 (243), citing many authorities: "If the liquor was within the power of the defendant, in such a sense that he could and did command its use, the possession was as complete within the meaning of the statute as if his possession had been actual.

The possession may, within this statute, be either actual, or constructive."

In *S. v. Estes,* 185 N. C., 752 (754), speaking to the subject: "But where, as an inference of law the uncontradicted evidence, if accepted as true, establishes the defendant's guilt it is permissible for the court to instruct the jury to return a verdict of guilty if they find the evidence to be true beyond a reasonable doubt. *S. v. Vines,* 93 N. C., 493; *S. v. Winchester,* 113 N. C., 642; *S. v. Riley, ibid.,* 648; *S. v. Woolard,* 119 N. C., 779."

Where the intent is an ingredient of the crime, the rule is different. It is said in *S. v. Rawls,* 202 N. C., 397 (399): "The fraudulent intent in this case was a question of fact for determination by the jury and not an inference of law for the decision of the court."

The jury rendered a verdict of guilty. The verdict was a general one. In *S. v. Switzer,* 187 N. C., 88 (96-97), speaking to the subject: "There was a general verdict of guilty, which, in law, was a verdict of guilty on each and every count. The general verdict of guilty upon two counts will be sustained if the evidence justifies either. *S. v. Toole,* 106 N. C., 736; *S. v. Strange,* 183 N. C., 775."

We see on the entire record no prejudicial or reversible error. The case is a most flagrant violation of the law. The distillery was in the very shadow of the home. On the premises and in the home was liquor and the implements used in the traffic. This is a government founded on the consent of the governed, a democracy, the best so far devised by the human family. The will of the majority under constitutional limitations, the supreme law of the land.

SALES CO. *v.* MEYER.

The use of alcohol is recognized as a habit-forming drug. The General Assembly of North Carolina, Public Laws of 1929, chap. 96, passed an act to require in the public schools of the State instruction "of the effects of alcoholism and narcotism on the human system." This teaching to have the effect to prevent the use of these habit-forming drugs, so destructive to the human family.

The people of this State on 27 May, 1908, voted "against the manufacture and sale of intoxicating liquor" by a majority of 44,196. On 7 November, 1933, this State, out of a total vote of 415,536, voted 184,572 majority for dry delegates against the repeal of the Eighteenth Amendment. From these mandates of the people, it is the duty of all law officers to enforce and the people to obey this and we may say, all other laws on the statute books—our civilization depends on orderly government. The able and learned judge in the court below tried the case on the well settled principles of law applicable to the facts. In the record, we find

No error.