STATE OF NORTH CAROLINA v. LAMONT ARMSTRONG

No. 41A96

(Filed 6 December 1996)

## 1. Homicide § 226 (NCI4th)— first-degree murder—defendant as perpetrator—sufficiency of evidence

The State presented plenary evidence to support a jury finding that defendant was the perpetrator of a first-degree murder where a witness testified that he drove defendant to the victim's house and that he was present when defendant began to attack the victim physically; a second witness testified that he saw defendant enter the victim's house about the time of the murder and exit a short while later; a third witness testified that defendant told him that he went to the victim's house to borrow money, got into a struggle with the victim when she refused to advance

STATE v. ARMSTRONG

[345 N.C. 161 (1996)]

him a loan, and consequently put a drop cord around her neck; and another witness testified that defendant talked about the murder, imparting more information than anyone not present at the murder scene should have known, and that defendant said that he "had the sense to do it by [him]self" and was going to be "proof that he beat the system."

**Am Jur 2d, Homicide §§ 425 et seq.**

**2. Evidence and Witnesses § 2055 (NCI4th)— absence of fingerprints—detective's qualifications**

A detective's testimony that it was common not to find identifiable fingerprints at a crime scene was nothing more than a statement of fact which his employment and experience qualified him to give without his being qualified as an expert.

**Am Jur 2d, Expert and Opinion Evidence §§ 279 et seq.**

**Fingerprints, palm prints, or bare footprints as evidence. 28 ALR2d 1115.**

**3. Evidence and Witnesses § 2054 (NCI4th)— request for DNA testing of bloodied items—not speculation about perpetrator's blood—admissibility as foundation for exhibits**

A detective did not improperly speculate about the actual presence of the perpetrator's blood at the crime scene by his testimony that he requested that bloodied items recovered from the crime scene be tested for a possible DNA match with blood samples from defendant and a codefendant and that he did not have any reason to suspect that the perpetrator shed blood in the victim's house, and this testimony was admissible as the foundation for the introduction of several of the State's exhibits.

**Am Jur 2d, Expert and Opinion Evidence § 300.**

**Admissibility of DNA identification evidence. 84 ALR4th 313.**

Justice FRYE did not participate in the consideration or decision of this case.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Freeman, J., at

the 14 August 1995 Criminal Session of Superior Court, Guilford County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 14 November 1996.

*Michael F. Easley, Attorney General, by Norma S. Harrell, Special Deputy Attorney General, for the State.*

*Henry E. Frye, Jr., for defendant-appellant.*

WHICHARD, Justice.

Defendant was tried noncapitally for the first-degree murder of Ernestine Crowder Compton. The jury found defendant guilty as charged, and the trial court sentenced him to a mandatory term of life imprisonment.

The State's evidence at trial tended to show that on 9 July 1988 defendant asked Charles Blackwell to give him a ride to the victim's house so that defendant could borrow money from her. Blackwell testified that he drove defendant to the house and sat on the front porch while defendant went inside. Blackwell went inside when he heard defendant and the victim arguing. The victim told defendant he could not borrow more money until he repaid what he already owed her. Upon hearing this, defendant grabbed the victim by the neck and pushed her to the ground. Blackwell testified that he left at this point and told defendant that he should leave as well. Defendant caught up with him outside the house a short time later. After they were back in Blackwell's vehicle, defendant pulled from his pocket some money and a watch he had taken from the victim.

Timothy McCorkle testified that he saw Blackwell and defendant parked in front of the victim's house. According to McCorkle, defendant went in the house while McCorkle talked to Blackwell. McCorkle left briefly, and when he returned, he saw Blackwell and defendant running out of the victim's house. He heard Blackwell, who came out first, say "Damn Lamont."

William Davis testified that he had been incarcerated with defendant in Asheville in 1992 and later in McLeansville. Davis stated that defendant was concerned that his codefendant, Blackwell, was "trying to snitch on him" in exchange for money. Defendant told Davis that he went to the victim's house to borrow money but got into a struggle with her when she refused to advance him a loan. Defendant put a drop cord around the victim's neck while Blackwell searched

the house. Defendant told Davis that he felt sure no one would believe he had committed the crime because the victim was his mother's close friend.

Wayne Blockem also testified for the State. Blockem was serving a prison sentence at the time of defendant's trial and had shared a holding cell with defendant and Charles Blackwell. According to Blockem, while he and defendant were alone in the cell, defendant had talked about the murder, imparting more information than anyone not present at the murder scene should have known. Defendant told Blockem that he "had sense enough to do it by [him]self," that the investigating officer was wrong when he said where various items were located in the victim's house, and that he (defendant) was going to be "proof that he beat the system."

Defendant also presented evidence at trial. His first witness, Dolphus Cates, testified that he had been incarcerated with Blackwell and that Blackwell had told him defendant did not have anything to do with the murder. Defendant's brother, Kermit Armstrong, testified as well. He stated that if defendant needed money, he could have gotten it from their parents. Defendant would not have attempted to borrow money from the victim because she was a close friend of defendant's mother and would have reported defendant's activities to her. Finally, defendant testified in his own behalf. He maintained that he knew nothing about the murder, was at a Winston-Salem barber shop at the time, and fully cooperated with the investigation. He further maintained that he had met Blackwell in prison and had not associated with him outside of jail. He said he knew nothing of the victim's practice of loaning money and that he had never borrowed from her.

[1] Defendant first argues that the trial court erred in denying his motion to dismiss made at the close of all the evidence. Defendant does not dispute the sufficiency of the evidence establishing that the crime of first-degree murder was committed but contends that the evidence was insufficient to establish that he was the perpetrator. We disagree.

The question presented on such a motion is whether, upon consideration of all the evidence in the light most favorable to the State, there is substantial evidence that the crime charged in the bill of indictment was committed and that defendant was the perpetrator. *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990).

Substantial evidence is that amount of "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988).

Review of the record reveals that the State presented plenary evidence to support a finding that defendant was the perpetrator of the murder of Ernestine Compton. Charles Blackwell testified that he drove defendant to the victim's house and that he was present when defendant began to attack the victim physically. Timothy McCorkle placed defendant at the scene of the crime, testifying that he saw defendant enter the victim's house about the time of the murder and exit a short while later. William Davis testified that defendant told him that he went to the victim's house to borrow money, got into a struggle with the victim when she refused to advance him a loan, and consequently put a drop cord around her neck. Wayne Blockem testified that defendant talked about the murder, imparting more information than anyone not present at the murder scene should have known, and that defendant said that he "had sense enough to do it by [him]self," and was going to be "proof that he beat the system."

Confronted with this testimony, defendant nevertheless argues that the State's physical evidence did not link him to the murder scene. The existence of inculpatory physical evidence is not a requirement for overcoming a defendant's motion to dismiss, however. Rather, contradictions, discrepancies, and omissions are for the jury to resolve. The evidence presented here, considered cumulatively and in the light most favorable to the State, clearly permitted a jury to find that a crime was committed and that defendant was the perpetrator. Accordingly, the trial court properly denied defendant's motion to dismiss, and this assignment of error is overruled.

[2] Defendant next argues that the trial court erred in allowing Detective Joseph Whitt of the Greensboro Police Homicide Unit to testify about the frequency of finding identifiable fingerprints. Detective Whitt testified on direct examination that it was common not to find identifiable fingerprints at a crime scene. Defendant contends that in admitting this testimony, the trial court erroneously permitted Detective Whitt to give his opinion without first qualifying

him as an expert. We conclude that Detective Whitt's testimony was nothing more than a statement of fact which his employment and experience qualified him to give. We therefore find no merit to defendant's argument.

[3] By his last assignment of error, defendant argues that the trial court erred in allowing Detective Whitt to testify as to whether a suspect's blood was left at the crime scene. Defendant contends the testimony was irrelevant and prejudicial. Our review of the transcripts convinces us that defendant misapprehends the nature of Detective Whitt's testimony and that considering its intended meaning, the testimony was admissible.

Detective Whitt testified that he requested that bloodied items recovered from the crime scene be tested for a possible DNA match with blood samples from defendant and Charles Blackwell. He stated that he did not have any reason to suspect that the perpetrator shed blood in the house, only that he wanted the test performed. The witness was merely explaining that his request to have DNA comparisons made of various blood samples found at the scene was routine and not based on any particular expectation or belief that the perpetrator's blood was in fact left at the scene. He was not speculating about the actual presence of blood, as defendant contends. The testimony was the foundation for the introduction of several of the State's exhibits; as such, it was clearly relevant and admissible. Defendant's assignment of error on these grounds is overruled.

We conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.

Justice FRYE did not participate in the consideration or decision of this case.