STATE OF NORTH CAROLINA v. SHELTON LOCKLEAR

No. 9318SC1309

(Filed 6 December 1994)

1. **Evidence and Witnesses § 1775 (NCI4th)— requiring defendant to speak—voice identification not necessary for victim—no error**

Even though a robbery victim stated that she did not need to hear defendant speak in order to identify him, the trial court did not err in requiring defendant to demonstrate his voice to the victim and the jury for purposes of voice identification.

**Am Jur 2d, Evidence § 1018.**

STATE v. LOCKLEAR

[117 N.C. App. 255 (1994)]

**Requiring suspect or defendant in criminal case to demonstrate voice for purposes of identification. 24 ALR3d 1261.**

2. **Indictment, Information, and Criminal Pleadings § 39 (NCI4th)— date changed in habitual felon indictment—no error**

Because the date alleged in the indictment was neither an essential nor a substantial fact as to the charge of habitual felon, the trial court properly allowed the State to change the habitual felon indictment to allege the correct date of the offense.

**Am Jur 2d, Indictments and Informations § 194.**

**Power of court to make or permit amendment of indictment with respect to allegations as to time. 14 ALR3d 1297.**

Appeal by defendant from judgments entered 24 August 1993 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 18 October 1994.

*Attorney General Michael F. Easley, by Associate Attorney General John A. Greenlee, for the State.*

*McNairy, Clifford & Clendenin, by Robert O'Hale, for defendant-appellant.*

JOHNSON, Judge.

On 29 March 1993, defendant Shelton Locklear was indicted by the Guilford County Grand Jury. The first indictment charged defendant with the offense of common law robbery, in violation of North Carolina General Statutes § 14-87.1 (1993), and the second indictment alleged defendant was an habitual felon, pursuant to North Carolina General Statutes § 14-7.1 (1993). The case was tried in Guilford County Superior Court on 26 July 1993.

Prior to the presentation of evidence to the jury, the State made a motion to change the date of the commission of the felony supporting the habitual felon indictment from 19 December 1992 to 2 December 1992. The State argued that defendant had sufficient notice of the alleged date intended to be proved because the correct date of the offense appeared on the first indictment, the one for common law robbery. Counsel for defendant objected, stating that the second indictment did not represent a true bill from the grand jury because

**STATE v. LOCKLEAR**

[117 N.C. App. 255 (1994)]

the date listed on the habitual felon indictment was incorrect. The trial court allowed the motion, stating that it was the fact that another felony was committed, not its specific date, which was the essential question in the habitual felon indictment.

Evidence presented at trial showed the following: Carol Hill testified that she was working at the Quality Mart on Randleman Road in Greensboro, North Carolina on 2 December 1992, and that a man came in and spoke to her, saying, among other things, "This is a stick up. Give me all your money[,]" and "[Y]ou didn't push that button, did you[?]" Ms. Hill further testified that this man told her "[h]e wanted the big bills out of the bottom of the register." Ms. Hill identified the man as defendant and testified that defendant kept his hand in his pocket and she thought he had a weapon; that defendant had come in earlier and carried a bottle of wine up to the counter but that she did not sell the wine to defendant because he did not have an I.D. card; and that the person who robbed her did not have anything concealing his face and was not wearing a hat or sunglasses. Ms. Hill further stated that approximately a month and a half after the robbery, she was shown a photographic lineup by Detective J. Sanders and that she picked out defendant's picture. Ms. Hill identified a videotape of the robbery that had been made by the store security camera and described the video tape for the jury. Ms. Hill stated that the person who robbed her did not really have an accent, and that he was soft spoken and did not say much.

After defendant's cross-examination of Ms. Hill, during which time defendant questioned Ms. Hill as to her recollection of the persons she saw that day in her workplace and her identification of defendant, Ms. Hill was asked by the State on re-direct examination to confirm her previous identification of defendant and was asked whether it would help her to hear defendant speak the words he used the night of the robbery. Ms. Hill responded, "No. I don't need any more. I can tell it's him . . . I mean, he can if he wants to, but I can tell by just his face, he's the one." The State then asked the court to order defendant to say, "This is a stick up[,]" and over defendant's objection, the trial court ordered defendant to say this. After defendant spoke, when asked if this was the same voice, the witness said, "Yes." Then, at the request of the prosecution, and overruling one objection but reserving ruling upon a second, defendant was ordered to speak the words, "Have you already pushed the button[?]" When asked if it was the same voice, Ms. Hill again said, "Yes." The objection to a third request, that defendant speak the words, "I want the big bills under

the drawer[,]" was sustained. The trial court later ruled on defendant's second objection that the speaking of the second phrase "was highly prejudicial to my client." Counsel for defendant did not present to the court any constitutional basis in support of his objection. The court ruled that because Ms. Hill had testified that the challenged words were spoken to her by defendant, the probative value in requiring defendant to speak those words outweighed any prejudicial effect.

On 27 July 1993, the jury returned a verdict of guilty of common law robbery. Evidence was then presented at the habitual felon stage and defendant was convicted on 27 July 1993 of being an habitual felon. After being sentenced, defendant gave notice of appeal to our Court.

[1] Defendant presents two arguments on appeal. Defendant's first argument is that the trial court erred in ordering defendant to speak the exact words the robber spoke in the courtroom in the presence of the jury for the witness to make a voice identification. Defendant argues that because Ms. Hill stated that she did not need to hear defendant speak in order to identify him and that it would not make any difference to her, the trial court erred in ordering defendant to repeat the words the robber had stated because "defendant's voice exemplars had no probative value whatsoever and had only prejudicial value." Defendant further argues that the "[voice] demonstration was deemed to involve testimonial compulsion by which the accused was, in effect, compelled to be a witness against himself in violation of his constitutional privilege." Although defendant is raising the constitutional aspect of this issue for the first time on appeal, we choose to address it in our discretion. *State v. Elam*, 302 N.C. 157, 273 S.E.2d 661 (1981). N.C.R. App. P. 2.

In *State v. Perry*, 291 N.C. 284, 230 S.E.2d 141 (1976) our Supreme Court held that there was no error when the trial court required the defendant to stand before the jury and place an orange stocking mask over his head and face in the way the victim testified it was worn by the man who robbed and shot her. In *Perry*, 291 N.C. at 289, 230 S.E.2d at 144, the Court quoted *Schmerber v. California*, 384 U.S. 757, 764, 16 L.Ed.2d 908, 916 (1966) in noting that "both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." The

STATE v. LOCKLEAR

[117 N.C. App. 255 (1994)]

Supreme Court held in *U.S. v. Wade*, 388 U.S. 218, 222-23, 18 L.Ed.2d 1149, 1155 (1967) that compelling a suspect to give a voice sample in a lineup was not violative of the Fifth Amendment because the accused did not have to "utter statements of a testimonial nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt."

Although North Carolina has not directly addressed the issue of voice identification during trial, other states have done so. *See Lusk v. State*, 367 So.2d 1088 (Fla. App. 1979); *Coffey v. State*, 261 Ark. 687, 550 S.W.2d 778 (1977); *State v. Lacoste*, 256 La. 697, 237 So.2d 871 (1970). *See generally* 3 ALR4th 374 § 12. In these cases, compelling the defendant to speak during trial was done for the purpose of allowing a witness to identify the defendant's voice. *See also Burnett v. Collins*, 982 F.2d 922 (5th Cir. (Tex.) 1993); *U.S. v. Williams*, 704 F.2d 315 (6th Cir. (Mich.)), *cert. denied*, 464 U.S. 991, 78 L.Ed.2d 679 (1983). *But see U.S. v. Brown*, 644 F.2d 101 (2nd Cir. (Vt.)), *cert. denied*, 454 U.S. 881, 70 L.Ed.2d 195 (1981) (Oakes, C.J., dissenting) (stating that "by having the defendant uttering the threatening and menacing words that the robber had allegedly used . . . [i]t is hard for me to conceive of a more prejudicial method of establishing a voice identification.") (*Compare State v. Hubanks*, 173 Wis.2d 1, 17, 496 N.W.2d 96, 101 (1992), *disc. review denied*, 497 N.W.2d 130, *cert. denied*, —— U.S. ——, 126 L.Ed.2d 66 (1993), where a court ordered voice identification was held proper when "used only for the purpose of voice identification"; the Court opined in a footnote, "that is not to say that such a voice sample will be appropriate in every situation. There may be situations where forcing a criminal defendant to utter the words of the crime would be so inherently prejudicial that a conviction would warrant reversal.")

So noting, we find, notwithstanding that Ms. Hill stated that she did not need to hear defendant speak in order to identify him, that the trial court correctly requested and required defendant to demonstrate his voice to Ms. Hill and to the jury for purposes of voice identification. After each instance of requiring defendant to speak, Ms. Hill was asked if this was the same voice, and after each instance, she responded affirmatively. Further, after the voice identification, the court instructed the jury that

> the mere fact that the Court has requested and required the defendant to demonstrate his voice to you in no way is indicative of any fact that he may have been present on that occasion, or

**STATE v. LOCKLEAR**

[117 N.C. App. 255 (1994)]

made any statements like that on that occasion. In other words, it was merely for the purpose of illustrating and demonstrating his voice to the witness in this case, and to the jury. And it is in no way indicative of any substantive fact that occurred on that date.

*Compare U.S. v. Olivera*, 30 F.3d 1195 (9th Cir.(Cal.) 1994) (where, while a witness was on the stand, the trial court ordered the defendant to speak the words uttered by the robber, and the witness was never asked if the voice was similar to that of the robber; the court found prejudicial error and ordered a new trial). Therefore, we reject defendant's argument.

[2] Defendant next argues that the trial court erred in allowing the State to "amend" the habitual felon indictment, noting that North Carolina General Statutes § 15A-923(e) (1988) states "[a] bill of indictment may not be amended." Defendant argues that "in an habitual felon indictment, the changing of a date substantially alters the charge."

The term "amendment" in North Carolina General Statutes § 15A-923(e) has been defined as "any change in the indictment which would substantially alter the charge set forth in the indictment." *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984). "Ordinarily, the date alleged in the indictment is neither an essential nor a substantial fact, and therefore the State may prove that the offense was actually committed on some date other than that alleged in the indictment without the necessity of a motion to change the bill." *State v. Cameron*, 83 N.C. App. 69, 72, 349 S.E.2d 327, 329 (1986). "The failure to state accurately the date or time an offense is alleged to have occurred does not invalidate a bill of indictment nor does it justify reversal of a conviction obtained thereon." *Id. See also* North Carolina General Statutes § 15-155 (1983). We agree with the trial court that in the case *sub judice*, it was the fact that another felony was committed, not its specific date, which was the essential question in the habitual felon indictment. Therefore, because the date alleged in the indictment is neither an essential nor a substantial fact as to the charge of habitual felon, we find the trial court properly allowed the State to change the habitual felon indictment.

No error.

Judges MARTIN and THOMPSON concur.