STATE OF NORTH CAROLINA v. DENNIS LEE BEST

No. COA10-1264

(Filed 2 August 2011)

**1. Firearms and Other Weapons—carrying concealed weapon— possession of firearm by convicted felon—sufficient evidence**

The trial court did not err in a carrying a concealed weapon and possession of a firearm by a convicted felon case by denying defendant's motion to dismiss the charges against him. The State presented sufficient evidence of all the elements of the offenses, including that defendant possessed the firearm discovered in the van.

**2. Constitutional Law—effective assistance of counsel— untimely motion to suppress—no prejudice shown**

Defendant did not receive ineffective assistance of counsel in a concealed weapon and possession of a firearm by a felon case. Although defense counsel failed to move to suppress evidence in a timely manner, defendant failed to show the prejudice necessary for him to obtain relief on the basis of this claim.

**3. Sentencing—prior record level calculation—prior felony not double-counted**

The trial court did not erroneously calculate defendant's prior record level in a carrying a concealed weapon and possession of a firearm by a convicted felon case. The trial court did not err by using defendant's 1988 felonious breaking or entering conviction for the purposes of both supporting the possession of a firearm by a felon charge and calculating his prior record level.

Appeal by defendant from judgment entered 23 April 2010 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 8 March 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Ward Zimmerman, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for Defendant-Appellant.*

ERVIN, Judge.

STATE v. BEST

[214 N.C. App. 39 (2011)]

Defendant Dennis Lee Best appeals from a judgment entered by the trial court sentencing him to a minimum term of 107 months and a maximum term of 138 months imprisonment in the custody of the North Carolina Department of Correction based upon his convictions for carrying a concealed weapon and possession of a firearm by a convicted felon and his plea of guilty to having attained the status of an habitual felon. On appeal, Defendant contends that the evidence was not sufficient to support his convictions for possession of a firearm by a convicted felon and carrying a concealed weapon, that he received constitutionally deficient representation from his trial counsel, and that the trial court erred in calculating his prior record level for sentencing purposes. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that Defendant's challenges to the trial court's judgment lack merit and that those judgments should remain undisturbed.

## I. Background

### A. Substantive Facts

### 1. State's Evidence

Officer Thomas Poelling of the Wilmington Police Department testified that, shortly after midnight on 21 December 2006, he was on routine patrol. At that time, Officer Poelling noticed Defendant's van, which was one of the few vehicles on the road at that time of day, because the van was being driven slowly, travelling a meandering route, and did not appear to be heading toward any apparent destination. After Officer Poelling observed that the light above the vehicle's license plate was not operating, he stopped the van for the purpose of issuing a citation to the driver and directed Defendant to get out of the van. At the time that he stopped Defendant's van, Officer Poelling discovered that there were two passengers, who were later identified as Michelle Bollinger and Willie Parker, in the van.

About a minute after Officer Poelling stopped Defendant's van, Detective Victor Baughman arrived to provide backup. Detective Baughman went to the side of the van and spoke with Mr. Parker, who had exited the van and was walking away. After instructing Mr. Parker not to leave the area, Detective Baughman looked into the vehicle and saw three to five open cans of beer and a plastic bag containing a white powder that resembled cocaine. Detective Baughman informed Officer Poelling that he had found cocaine and open beer

containers in the van; at that point, all three occupants of the van were placed in handcuffs.

Ultimately, field testing revealed that the substance that Detective Baughman had observed in Defendant's van was not cocaine. However, once Detective Baughman announced that he had discovered beer cans and cocaine in the van, Officer Poelling came over for the purpose of examining the interior of the vehicle, which smelled of alcohol. In the course of looking into the van, Officer Poelling observed several open beer cans "in plain view." Officer Poelling testified that, as he retrieved the beer cans:

A: . . . . When I looked down, as I retrieved one of the beer cans that was open, I noticed the handle and hammer and also the rear of the cylinder of what I knew to be a revolver.

Q: And where was that?

A: Between the seats, the front passenger and the front driver's seat. And it was partially concealed with just—like I described before, just those areas of the gun exposed and it was mixed with clothing and other articles.

After discovering the loaded firearm, which was identified as a "Smith & Wesson .38 Special revolver," and securing it in his patrol vehicle, Officer Poelling questioned the occupants of the van about the gun.

At first, Defendant denied owning the revolver. However, "on the second occasion, [Defendant] explained that it was, in fact, his and [said that] everybody else had one, so he needed one to[o.]" When Officer Poelling asked Defendant if he was a convicted felon, Defendant replied in the affirmative. At that point, based on "[Defendant's] own admission, [Officer Poelling] decided to charge him with carrying [a] concealed weapon, [and] possession of [a] firearm by a convicted felon," so Defendant "was arrested, transported to the station, [and] processed[.]"

Mr. Parker, who had been friends with Defendant for a long time, was with Defendant on 21 December 2006. On that occasion, Defendant and Mr. Parker were driving in the van to an establishment known as Linda's Lounge, where they planned to play pool. After they picked up Ms. Bollinger, who was going to the same place, the group was stopped by law enforcement officers before reaching Linda's Lounge. Although Mr. Parker initially denied having seen Defendant with a gun on 21 December 2006, the prosecutor reminded Mr. Parker

of a statement that he had made to Detective Chris Mayo of the Wilmington Police Department in which Mr. Parker had admitted seeing Defendant with a gun. At that point, Mr. Parker testified that:

Q: And when did you see Mr. Best with that gun?

. . .

A: Well, it was when we—we decided to go to Linda's Lounge. There used to be a lot of stuff going on. They used to just jump on him and stuff and fight you. But I never seen— [Defendant] always been a quiet person. He never started nothing. But once you go to Linda's Lounge, you need something.

Q: So had you seen Mr. Best with this gun in the past?

A:  No, not—no, I haven't not in the past.

Q: Did you see it on him that night?

A: I saw it earlier that day.

Q: When did you see it, sir?

A: About, maybe about 3:00.

Q: In the afternoon?

A: Yes.

Q: And who had the gun?

A: Mr. Best.

Q: Where did he have it?

A: In his back pocket.

In addition, Mr. Parker testified that there were several beer cans in the van and that, at the time that Officer Poelling stopped the van, Defendant asked Mr. Parker to retrieve a beer can from the floor and put it in a cup holder.

Defendant's sister, Trixie Bass, testified that, although the van was titled to her, she had "sold" it to her brother, Lacey Bass, who, in turn, traded it to Defendant for another vehicle. Ms. Bass did not own a gun and had not seen Defendant in possession of a gun. Lacey Bass corroborated Ms. Bass' testimony concerning the ownership of the van and denied having ever owned a firearm himself or having seen Defendant in possession of a gun.

Detective Mayo, who had interviewed Mr. Parker, testified that:

Q:  And then did you ask [Mr. Parker] about the gun that was in the car?

A.:  Yes, ma'am, I did. He stated that he had seen that firearm earlier in the day. He stated that he knew Mr. Best to always—was the exact word he used and I put it in quotation marks in my handwritten report and also my typed report. That he always carried the .38 caliber pistol and that Parker stated Mr. Best normally carried the gun in his right rear pocket, like he described this morning. And he made the motion of how—to us on his steps, how he put it in his pocket (indicating).

He said he had seen Mr. Best in possession of the pistol on December 21st, 2006 and that Mr. Best had placed the pistol on the floor next to the seat earlier in the day.

A copy of a judgment showing Defendant's conviction for felonious breaking and entering on 9 May 1988 was admitted into evidence as well.

## 2. Defendant's Evidence

Defendant testified that he had traded his truck to Mr. Bass in exchange for Ms. Bass' van about ten days before he was stopped by Officer Poelling. In addition to being one of his friends, Mr. Parker had worked for Defendant as a painter on an intermittent basis.

On 21 December 2006, Defendant and Mr. Parker worked on a painting job until around 5:00 p.m. After work, the two of them visited Mr. Parker's house, then went to Defendant's mother's house before returning to Mr. Parker's residence, where they sat in the van in Mr. Parker's driveway for three or four hours, until approximately 11:30 p.m. Although Mr. Parker drank several beers during this three or four hour period, Defendant did not consume any alcoholic beverages during this interval.

At that point, Defendant and Mr. Parker decided to go to Linda's Lounge in order to play pool. On the way to Linda's Lounge, they saw Ms. Bollinger, who was also planning to go to Linda's Lounge, and gave her a ride. However, the van was stopped by law enforcement officers before the group arrived at Linda's Lounge. Defendant conceded that "there could have been a problem with" the license plate light and explained that the powder discovered in the van was baking soda, which he used on camping trips and as toothpaste and a cleanser.

Defendant denied owning or possessing the revolver found in the van and testified that he had never seen the firearm before, that he did not know who owned it, and that he had not told Officer Poelling that the weapon was his. Defendant also denied that there were any beer cans in the van. Defendant did not see Mr. Parker or Ms. Bollinger with a gun on 21 December 2006. Moreover, Defendant had never seen his brother or sister in possession of a firearm. However, six or seven other people had ridden in the van during the week prior to the date upon which he was stopped by Officer Poelling.

## B. Procedural History

On 21 December 2006, a warrant for arrest charging Defendant with possession of a firearm by a convicted felon and carrying a concealed weapon was issued. On 29 January 2007, the New Hanover County grand jury returned bills of indictment charging Defendant with carrying a concealed weapon, possession of a firearm by a convicted felon, and having attained the status of an habitual felon. The charges against Defendant came on for trial before the trial court and a jury at the 19 April 2010 criminal session of the New Hanover County Superior Court. After the presentation of the evidence, the arguments of counsel, and the trial court's instructions, the jury returned verdicts convicting Defendant of carrying a concealed weapon and possession of a firearm by a convicted felon on 23 April 2010. On the same date, Defendant entered a plea of guilty to having attained the status of an habitual felon. At the ensuing sentencing hearing, the trial court found that Defendant had accumulated nine prior record points and should be sentenced as a Level IV offender. Based upon these determinations, the trial court consolidated Defendant's convictions for judgment and sentenced Defendant to a minimum term of 107 months and a maximum term of 138 months imprisonment in the custody of the North Carolina Department of Correction. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Legal Analysis

## A. Sufficiency of the Evidence

[1] On appeal, Defendant initially argues that the trial court erred by denying his motion to dismiss the charges against him on the grounds that the State failed to adduce sufficient evidence that he actually or constructively possessed the firearm discovered in the van. Defendant's argument lacks merit.

When reviewing a challenge to the denial of a defendant's motion to dismiss for insufficiency of the evidence, this Court determines "whether the State presented 'substantial evidence in support of each element of the charged offense." *State v. Chapman,* 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005). " 'Substantial evidence' is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. Abshire,* 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (quoting *State v. McNeil,* 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005)). "In this determination, all evidence is considered 'in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence.' " *Id.* (citation omitted). "The defendant's evidence, unless favorable to the State, is not to be taken into consideration," *State v. Jones,* 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971), except that, "when it is consistent with the State's evidence, the defendant's evidence 'may be used to explain or clarify that offered by the State.' " *State v. Denny,* 361 N.C. 662, 665, 652 S.E.2d 212, 213 (2007) (quoting *Jones,* 280 N.C. at 66, 184 S.E.2d at 866 (citation omitted)). A " 'substantial evidence' inquiry examines the sufficiency of the evidence presented but not its weight," which remains a matter for the jury. *McNeil,* 359 N.C. at 804, 617 S.E.2d at 274 (citation omitted). Thus, "if there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.* (citation omitted).

N.C. Gen. Stat. § 14-415.1(a) provides, in pertinent part, that "[i]t shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm[.]" "Thus, the State need only prove two elements to establish the crime of possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. Wood,* 185 N.C. App. 227, 235, 647 S.E.2d 679, 686, *disc. review denied,* 361 N.C. 703, 655 S.E.2d 402 (2007). Similarly, N.C. Gen. Stat. § 14-269(a1) provides, in pertinent part, that "[i]t shall be unlawful for any person willfully and intentionally to carry concealed about his person any pistol or gun[.]" Thus, "[a]s to the charge of carrying a concealed weapon, the elements of the offense are: '(1) The accused must be off his own premises; (2) he must carry a deadly weapon; [and] (3) the weapon must be concealed about his person.' " *State v. Gayton,* 185 N.C. App. 122, 127, 648 S.E.2d 275, 279 (2007) (quoting *State v. Williamson,* 238 N.C. 652, 654, 78 S.E.2d 763, 765

(1953)). "The State must prove that the weapon is concealed 'not necessarily on the person of the accused, but in such position as gives him ready access to it.'" *State v. Soles*, 191 N.C. App. 241, 244, 662 S.E.2d 564, 566 (2008) (quoting *State v. Gainey*, 273 N.C. 620, 622, 160 S.E.2d 685, 686 (1968)). As a result, a finding of guilt of both of the offenses with which Defendant was charged effectively required proof that he possessed a firearm.

Defendant does not dispute that the .38 caliber revolver was a firearm or that the firearm was found in "such [a concealed] position as g[ave] him ready access to it." In addition, Defendant does not deny that he had previously been convicted of committing a felony. As a result, his challenge to the sufficiency of the evidence to support his convictions hinges on "whether there was sufficient evidence of *his* possession of the firearm that Officer Poelling testified he had found in the van." We conclude that the record contained sufficient evidence to permit the jury to reasonably answer this question in the affirmative.

" 'In a prosecution for possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials.' Proof of nonexclusive, constructive possession is sufficient. Constructive possession exists when the defendant, 'while not having actual possession, . . . has the intent and capability to maintain control and dominion over' the [contraband]." *McNeil* at 809, 617 S.E.2d at 277 (quoting *State v. Perry*, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986), and *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986)). " 'Where [contraband is] found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.' 'However, unless the person has exclusive possession of the place where the [contraband is] found, the State must show other incriminating circumstances before constructive possession may be inferred.' " *Id.* at 809-10, 359 S.E.2d at 277 (quoting *State v. Butler*, 356 N.C. 141, 146, 567 S.E.2d 137, 140 (2002) (internal citation omitted), and *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989)).

The undisputed evidence tends to show that, in a transaction involving his siblings, Defendant had borrowed or traded his truck for the van which he was driving at the time that he was stopped by Officer Poelling. As a result, the firearm was found in a vehicle that was under Defendant's control. "In car cases, not only is ownership sufficient, but

[a]n inference of constructive possession can also arise from evidence which tends to show that a defendant was the custodian of the vehicle where the controlled substance was found. In fact, the courts in this State have held consistently that the "driver of a borrowed car, like the owner of the car, has the power to control the contents of the car." Moreover, power to control the automobile where a controlled substance was found is sufficient, in and of itself, to give rise to the inference of knowledge and possession sufficient to go to the jury.

*State v. Hudson*, ___ N.C. App ___, ___, 696 S.E.2d 577, 583 (2010) (quoting *State v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 886 (1984) (internal citations omitted)), *disc. review denied*, 364 N.C. 619, 705 S.E.2d 360 (2010). Although the fact that the revolver was found in a van driven by Defendant, standing alone, might be sufficient to permit a reasonable inference that Defendant possessed the firearm in question, the State presented additional evidence which tended to show that Defendant possessed the revolver as well.

As we have already indicated, the firearm was found on the floor next to the driver's seat, which placed it in close proximity to Defendant, who was driving the van at the time that it was stopped. In addition, Officer Poelling testified that Defendant admitted that he owned the gun and that, since "everybody else had one, . . . he needed one too." This admission was corroborated by Mr. Parker, who testified that he had seen Defendant in possession of the weapon that afternoon, and specifically remembered that Defendant had been carrying the gun in his pants pocket and later placed it on the van floor. Mr. Parker's testimony concerning this subject was, in turn, corroborated by Detective Mayo's account of his interview with Mr. Parker. As a result, we conclude that the evidence pertaining to the location in which the firearm was discovered, coupled with Defendant's admission and the testimony of Mr. Parker and Detective Mayo, is more than sufficient to support Defendant's convictions for carrying a concealed weapon and possession of a firearm by a convicted felon.

### B. Ineffective Assistance of Counsel

**[2]** Secondly, Defendant argues that he received ineffective assistance of counsel because his attorney "first raised a motion to suppress at the conclusion of the State's case-in-chief." "In order to obtain relief on the basis of an ineffective assistance of counsel claim, Defendant is required to demonstrate that his trial counsel's performance was deficient and that this deficient performance "prej-

udiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). The United States Supreme Court has enunciated a two-part test for use in determining if a defendant is entitled to relief on the basis of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 80 L. E. 2d at 693, 104 S. Ct. at 2064. The Supreme Court adopted the *Strickland* test for use in evaluating similar claims asserted under the North Carolina Constitution in *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985):

> The first element requires a showing that counsel made serious errors; and the latter requires a showing that, even if counsel made an unreasonable error, "there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings."

*State v. Banks*, ___j N.C. App. ___, ___, 706 S.E.2d 807, 821 (2011) (citing *Braswell*, 312 N.C. at 562, 324 S.E.2d at 248). We do not believe that Defendant is entitled to relief from his convictions on the basis of this contention.

At the close of the State's evidence, Defendant moved to suppress the evidence found as a result of the stopping of Defendant's van. At that point, the following colloquy occurred:

> THE COURT:  What says Defendant at the close of the State's case?
>
> [DEF. COUN.]:  Your Honor, first, I would make a Motion to Suppress and to strike any evidence that came in after the stop in this matter as I would contend there wasn't reasonable suspicion for the stop.
>
> THE COURT:  You want to be heard any further?
>
> [DEF. COUN.]:  No, Your Honor.

THE COURT: What says the State?

[PROSECUTOR]: Judge, I think we're past that point. I mean, the appropriate time to make that motion is prior to trial.

THE COURT: I agree. Respectfully denied.

Although Defendant contends on appeal that his trial counsel provided him with deficient representation by failing to move to suppress the evidence obtained as a result of Officer Poelling's decision to stop his van on 21 December 2006 in a timely manner, we do not believe that Defendant has made the showing of prejudice necessary for him to obtain relief on the basis of this claim.

The belated oral suppression motion that Defendant made in the trial court was based exclusively on the assertion that "there wasn't reasonable suspicion for the stop." On appeal, however, Defendant concedes that, "once Officer Poelling noticed 'an inoperable light—just above the license plate' . . . , he had probable cause to stop [the van] for the traffic infraction." Instead, Defendant argues that

> [Officer Poelling] had no authority at all to detain Mr. Best and his passengers beyond the time necessary to address the traffic infraction which was the only cause to stop the van. . . . Officer Poelling's testimony showed that, in fact, he detained [Defendant] beyond the original purpose of the stop when one of the other officers announced that they had found what appeared to be cocaine. . . . But with the field test of the substance returning a negative result . . ., that justification for further restraint of [Defendant's] liberty dissolved, and he should have been released at that point.

In advancing this argument, Defendant overlooks the presence of evidence tending to show that, (1) in addition to finding a bag of white powder that he reasonably believed to be cocaine, Detective Baughman saw several open beer cans in plain view inside the van; (2) Detective Baughman immediately informed Officer Poelling about the presence of the white powder and the beer cans; and, (3) when Officer Poelling reached into the van to retrieve the beer cans, he discovered a loaded .38 caliber revolver on the floor of the van between the passenger and driver's seats. All of these events occurred during a relatively brief period of time and constituted reasonable investigative steps taken on the basis of constantly changing information. As a result, despite the fact that the white powder was determined to be something other than cocaine before the end of Officer Poelling's

investigative activities, we conclude that the initial traffic stop was not unlawfully prolonged and that, even if Defendant had filed a timely pretrial suppression motion, neither the argument that he advanced at trial nor the argument that he has advanced on appeal would justify the suppression of the evidence seized as a result of that traffic stop. As a result, this argument lacks merit.

## C. Calculation of Defendant's Prior Record Level

[3] Finally, Defendant argues that the trial court erred in calculating his prior record level by assigning two prior record level points for a prior felonious breaking or entering conviction on the grounds that this offense "was the predicate felony used to prove his status as a felon who was prohibited from possessing a firearm." We do not find Defendant's argument persuasive.

The record clearly reveals that the trial court calculated Defendant's prior offense level on the basis of a determination that Defendant had accumulated nine prior record points, four of which stemmed from prior convictions for two Class H or Class I felonies and five of which stemmed from misdemeanor convictions. The habitual felon indictment returned against Defendant alleged that:

> On or about 3-18-1990, [Defendant] did commit the felony of First Degree Burglary §14-51, and that on or about 9-4-1990, [Defendant] was convicted of the felony of First Degree Burglary §14-51, case # 90CRS6077 in the Superior Court of New Hanover County, North Carolina;

> On or about 2-15-1988, [Defendant] did commit the felony of Possession of Burglary Tools §14-55, and that on or about 5-9-1988, [Defendant] was convicted of the felony of Possession of Burglary Tools §14-55, case # 88CRS 2781, in the Superior Court of New Hanover County, North Carolina;

> On or about 7-27-1985, [Defendant] did commit the felony of Breaking and/or Entering §14-54(A), and that on or about 1-3-1986, [Defendant] was convicted of the felony of Breaking and/or Entering §14-54(A), case # 85CRS 17468, in the Superior Court of New Hanover County, North Carolina.

The indictment charging Defendant with possession of a firearm by a convicted felon alleged that:

> THE JURORS FOR THE STATE UPON THEIR OATH present that on or about the date of the offense shown above and in the

> county named above the defendant named above unlawfully, willfully and feloniously did possess a .38 Caliber Smith & Wesson Revolver, which is a firearm. The defendant had previously been convicted of the felony of Breaking and Entering which was punishable as a class H felony. This felony was committed on 2/15/88 and the defendant pled guilty to the felony on 5/9/88 in New Hanover County Superior Court, Wilmington, North Carolina and was sentenced to 3 years confinement. . . .

At the sentencing hearing, Defendant stipulated to the accuracy of a prior record worksheet, which, in addition to the felonies specified in the habitual felon and possession of a firearm by a felon indictments, indicated that Defendant had also been convicted of felonious breaking or entering, a Class H offense, in New Hanover County on 4 October 1983. As a result, the only way in which the trial court could have concluded that Defendant had been convicted of two Class H felonies for purposes of determining Defendant's prior record level without running afoul of N.C. Gen. Stat. § 14-7.6 (providing that, "[i\n determining the prior record level, convictions used to establish a person's status as an habitual felon shall not be used") was to include both the 1983 conviction for felonious breaking or entering, which was not mentioned in either the habitual felon or possession of a firearm by a felon indictments, and the 1988 felonious breaking or entering conviction, which the State utilized in support of the possession of a firearm by a felon charge, in making that calculation.

On appeal, Defendant argues that the trial court erred by using his 1988 felonious breaking or entering conviction for the purpose of both supporting the possession of a firearm by a felon charge and calculating his prior record level. In support of this argument, Defendant places principal reliance on our decision in *State v. Gentry*, 135 N.C. App. 107, 519 S.E.2d 68 (1999), in which we held that the limitations applicable to the sentencing of habitual felons applied to defendants convicted of habitual impaired driving in violation of N.C. Gen. Stat. § 20-138.5, which this Court has described as "a separate felony offense" rather than "solely a punishment enhancement status," *State v. Priddy*, 115 N.C. App. 547, 549, 445 S.E.2d 610, 612, *disc. review denied*, 337 N.C. 805, 449 S.E.2d 751 (1994), so that a prior impaired driving conviction used to establish the defendant's guilt of habitual impaired driving could not be included in the calculation of the defendant's prior record points.

> [O]ur legislature recognized the basic unfairness and constitutional restrictions on using the same convictions both to elevate

a defendant's sentencing status to that of an habitual felon, and then to increase his sentencing level. We believe it is reasonable to conclude that that same legislature did not intend that the convictions which elevate a misdemeanor driving while impaired conviction to the status of the felony of habitual driving while impaired, would then again be used to increase the sentencing level of the defendant.

The State argues that being an habitual felon is a status, while felony driving while impaired is a substantive offense. We do not find that the distinction requires a different result. In both instances, a defendant commits a violation of our criminal laws, has committed three offenses of the same class within the past seven years, and has his punishment sharply increased as a result of the consideration of those prior offenses. We find the distinction urged by the State to be one without a difference. Further, whatever doubt there may be must be resolved in favor of the defendant. It is basic learning that criminal laws must be strictly construed and any ambiguities resolved in favor of the defendant.

*Gentry*, 135 N.C. App at 111, 519 S.E.2d at 70-71 (citing *State v. Pinyatello*, 272 N.C. 312, 314, 158 S.E.2d 596, 597 (1968), and *State v. Scoggin*, 236 N.C. 1, 10, 72 S.E.2d 97, 103 (1952)). A careful analysis of this Court's decisions since *Gentry* demonstrates, however, that this Court has been unwilling to apply the logic utilized in *Gentry* to cases involving convictions for possession of a firearm by a convicted felon.

As we noted in discussing Defendant's challenge to the sufficiency of the evidence to support his convictions, N.C. Gen. Stat. § 14-415.1(a) makes it "unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm," with "every person [convicted of] violating the provisions of this section [subject to punishment] as a Class G felon." N.C. Gen. Stat. § 14-415.1(a). In *Wood*, 185 N.C. App. at 236, 647 S.E.2d at 686-87 (citing *Priddy*, 115 N.C. App. at 549, 445 S.E.2d at 612 (other citations omitted)), we noted that, "while N.C. Gen. Stat. § 14-415.1 has characteristics of a recidivist statute, a plain reading of the statute shows it creates . . . a substantive offense to which the Sixth Amendment right to a jury trial applies, and not a sentencing requirement aimed at reducing recidivism." As a result, like habitual impaired driving, possession of a firearm by a felon is a separate substantive felony offense. *That fact does not, according to a careful analysis of this*

Court's decisions, mean that the approach adopted in *Gentry* in the habitual impaired driving context is equally applicable to cases in which a defendant has been convicted of felonious possession of a firearm by a felon.

Although this Court has not addressed the exact issue raised by the trial court's sentencing decision in this case, we have touched on it several times. In *State v. Harrison*, 165 N.C. App. 332, 335, 598 S.E.2d 261, 262, *disc. review denied*, 359 N.C. 72, 604 S.E.2d 922 (2004), we rejected the defendant's challenge, in reliance on *Gentry*, to the trial court's decision to utilize the second degree rape conviction which led to the requirement that the defendant register as a sex offender for the purpose of calculating his prior record level following the defendant's conviction for failing to register by stating, among other things, that the situation at issue in that case was analogous to "a conviction for the offense of possession of a firearm by a felon" and noting that a defendant could be convicted of both that offense and found to have attained habitual felon status using the same predicate felony. (citing *State v. Glasco*, 160 N.C. App. 150, 160, 585 S.E.2d 257, 264, *disc. review denied*, 357 N.C. 580, 589 S.E.2d 356 (2003)). Similarly, in *State v. Goodwin*, 190 N.C. App. 570, 661 S.E.2d 46 (2008), *disc. review denied*, 363 N.C. 133, 675 S.E.2d 664 (2009), *cert. denied*, 364 N.C. 437, 702 S.E.2d 499 (2010), this Court held that both a possession of a firearm by a felon conviction and the conviction for the felony underlying the defendant's conviction for that offense could be utilized to calculate the prior record level of a defendant convicted of second degree murder and attempted first degree murder, rejecting an argument to the contrary advanced by the defendant in reliance on *Gentry* by noting that "[p]ossesion of a firearm by a felon is a separate substantive offense from the defendant's prior felony upon which his status as a felon was based." Finally, this Court has rejected the position taken by Defendant in this case in two unpublished decisions. *State v. Nicholson*, 182 N.C. App. 766, 643 S.E.2d. 83, *disc. review denied*, 361 N.C. 701, 653 S.E.2d 154 (2007) (holding that the trial court did not err by utilizing the same conviction used to establish the defendant's guilt of possession of a firearm by a felon in calculating his prior record for that conviction); *State v. Moore*, 2011 N.C. App. Lexis 1353 *3-4 (2007) (holding that the trial court did not err by utilizing the same conviction used to establish the defendant's guilt of possession of a firearm by a felon in calculating his prior record level for that conviction). Although the logic of each of these decisions is somewhat different and although both of the reported decisions deal with distinguishable factual situations, all of them

refuse to apply *Gentry* on the essential basis that *Gentry* involved a true instance of "double-counting," so that "[t]he defendant's sentence for his current DWI was first enhanced from a misdemeanor to a felony and then was enhanced a second time by those same prior convictions when they were counted as part of his prior record level." *State v. Hyder*, 175 N.C. App. 576, 580, 625 S.E.2d 125, 128 (2006). As a result, given that the mere possession of a firearm, unlike driving while impaired, is not a criminal offense, the sort of "double-counting" condemned in *Gentry*, in which an act already declared to constitute a criminal offense is punished more severely based on the defendant's prior record, simply does not occur when the same conviction is utilized to both establish the defendant's guilt of the underlying offense and to calculate his prior record level utilized in sentencing him for that offense. Thus, given the factual situation at issue in this case, we conclude that Defendant's final challenge to the trial court's judgment lacks merit as well.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that Defendant had a fair trial, free from prejudicial error, and that none of Defendant's challenges to the trial court's judgment have merit. As a result, the trial court's judgment should remain undisturbed.

NO ERROR.

Judges ROBERT C. HUNTER and STEPHENS concur.