An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-959

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Onslow County |
|  | Nos. 11 CRS 53063 |
| NICHOLAS TAVARES WEST, | 11 CRS 53064 |
| Defendant. |  |

Appeal by defendant from judgments entered 3 April 2013 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 22 January 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Belinda A. Smith, for the State.*
>
> *Sue Genrich Berry for defendant-appellant.*

GEER, Judge.

Defendant Nicholas Tavares West appeals his convictions of possession of a firearm by a felon, possession of drug paraphernalia, possession of up to one-half ounce of marijuana, and resisting a public officer. On appeal, defendant primarily argues that the trial court erred in denying his motion to dismiss the charge of possession of a firearm by a felon because the State failed to present substantial evidence that defendant

constructively possessed the handgun located in the trunk of the car defendant was driving. Given the State's evidence that defendant was the driver and sole occupant of the car, together with other circumstantial evidence that defendant constructively possessed the handgun, we hold the trial court properly denied defendant's motion.

Facts

The State's evidence tended to show the following facts. At about 9:45 p.m. on 8 May 2011, Officer Joshua Porter of the Jacksonville Police Department and his partner were driving in a marked patrol car with their windows down in an alleyway in a high drug-trafficking neighborhood in Jacksonville, North Carolina. The officers noticed an "overwhelming" smell of burning marijuana and saw there was an occupied Buick LeSabre nearby. They parked and approached the Buick to investigate the smell. One of the Buick's windows was down and, as he got closer, Officer Porter determined the Buick was "without question" the source of the smell. Officer Porter had seen defendant driving the Buick on several occasions, and a subsequent search revealed that, on 8 May 2011, the Buick was registered to defendant.

Defendant was sitting in the driver's seat of the Buick and was the only occupant. The officers had defendant exit the

Buick and asked defendant where the marijuana was located. Defendant denied smoking marijuana, pointed to another car in the area, and claimed someone in the other car was smoking marijuana. When both officers looked toward the other car, defendant fled on foot. The officers ran after defendant and eventually overtook him. After being caught, defendant continued to physically struggle with the officers to the point that Officer Porter's partner tased defendant to subdue him.

Officers then searched the Buick and, on the front passenger side floorboard, discovered a hand-rolled cigar filled with marijuana and charred at one end. Officers also found a metal pipe used to smoke marijuana in a duffel bag in the back seat; between 20 and 50 clear plastic sandwich bags, which are often used to package marijuana, in the center console; and marijuana residue on the floorboard of the rear passenger side seat. There were several articles of mail in defendant's name located in the front passenger-side seat.

Upon looking in the trunk, officers immediately saw in plain view a shiny silver .25 caliber handgun that had a round in the chamber and rounds in the magazine. In "close proximity" to the handgun, officers found a purple pouch containing a digital scale on which marijuana and white powder residue was found, and a silver bottle of GNC Inositol powder. There were

very few other items in the trunk. Officers also searched defendant's person and, in his wallet, found a pack of cigarette rolling papers that can be used to smoke marijuana.

Defendant was arrested and informed of the charges against him, including possession of a firearm by a felon. Later, while awaiting a bond determination, defendant told the officers that "he learned his lesson last time, and this time I'm taking the plea."

On 10 July 2012, defendant was indicted for possession of a firearm by a felon, possession with intent to sell or deliver a counterfeit controlled substance, possession of between one-half ounce and one and one-half ounces of marijuana, possession of drug paraphernalia, resisting a public officer, and being a habitual felon. Prior to trial, defendant pled guilty to possession of less than one-half ounce of marijuana, a lesser included offense of the indicted charge, and to resisting a public officer. Also prior to trial, the State dismissed the charge of possession with intent to sell or deliver a counterfeit controlled substance.

At trial, defendant introduced into evidence a certificate of title showing defendant transferred title of the Buick to his mother, Angela West Hunter, in January 2011. Defendant also presented the testimony of his wife, Angel West, and his mother

that tended to show the following. Defendant bought the Buick for Ms. Hunter because he had ruined her former car, and Ms. Hunter actually owned the Buick on 8 May 2011. Ms. Hunter often drove the Buick, and defendant, defendant's wife, and defendant's daughter each occasionally drove the Buick during the spring of 2011.

On 5 May 2011, Ms. Hunter was going through boxes belonging to her late stepmother when she found the silver handgun at issue in this case. She put the gun in the trunk of the Buick with the intention of giving it to a family member. However, after Ms. Hunter was unable to deliver the gun because the family member was not at home, she forgot about it. Ms. Hunter never told defendant the gun was in the trunk. Ms. Hunter was familiar with the purple pouch in the trunk, but she did not put it in the trunk, she never saw defendant with it, and she did not remember where she had seen it. Ms. Hunter had never seen the digital scale prior to trial.

On 8 May 2011, defendant, his wife, and their children drove together to Ms. Hunter's house for a Mother's Day dinner. Ms. West left by 7:30 p.m. with the children, and defendant stayed to watch basketball with his father. Ms. Hunter gave defendant permission to drive the Buick home and, on his way home, defendant delivered a plate of food to Ms. Hunter's friend

who lived on the street where the officers found defendant parked. Nobody besides Ms. Hunter drove the Buick between 5 May and 8 May 2011, and Ms. Hunter never opened the trunk after placing the gun in it.

The jury found defendant guilty of possession of a firearm by a felon and possession of drug paraphernalia. Defendant then admitted his status as a habitual felon. The trial court consolidated the offenses of possession of a firearm by a felon and possession of drug paraphernalia and sentenced defendant to a presumptive-range term of 88 to 118 months imprisonment. The trial court further consolidated the offenses of possession of up to one-half ounce of marijuana and resisting a public officer and sentenced defendant to a concurrent term of 60 days imprisonment. Defendant timely appealed to this Court.

I

Defendant first argues that the trial court erred in denying his motion to dismiss the charge of possession of a firearm by a felon. "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

"'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense

included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). In making its determination, the trial court considers all the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

"There are two elements to possession of a firearm by a felon: '(1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm.'" *State v. Mitchell*, ___ N.C. App. ___, ___, 735 S.E.2d 438, 442-43 (2012) (quoting *State v. Best*, 214 N.C. App. 39, 45, 713 S.E.2d 556, 561 (2011)), *appeal dismissed and disc. review denied*, 366 N.C. 578, 740 S.E.2d 466 (2013). The only issue in this case is whether the State presented substantial evidence that defendant possessed a firearm.

A defendant has possession of contraband when he has "both the power and intent to control its disposition or use." *State*

*v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 885 (1984). "Possession may be either actual or constructive." *Id.* "Constructive possession exists when there is no actual personal dominion over the [contraband], but there is an intent and capability to maintain control and dominion over it." *Id.*

Evidence that a defendant owns a vehicle can give rise to an inference of constructive possession of items within it. *Id.*, 318 S.E.2d at 886 ("Had the defendant, in the instant case, owned the automobile, an inference that he was in constructive possession of the controlled substance found therein would have been permissible."). Here, the State presented evidence that the Buick was registered to defendant and Officer Porter had previously seen defendant driving the Buick on several occasions. While defendant's evidence tended to show defendant transferred title of the Buick to his mother roughly four months prior to the search, it is well established that "defendant's evidence rebutting the inference of guilt is not to be considered [on a motion to dismiss] except to the extent that it explains, clarifies or is not inconsistent with the State's evidence[.]" *State v. Walker*, 332 N.C. 520, 530, 422 S.E.2d 716, 722 (1992).

In addition to the presumption arising from the State's evidence that the Buick was registered to defendant, "[a]n

inference of constructive possession can also arise from evidence which tends to show that a defendant was the custodian of the vehicle where the [contraband] was found." *Dow*, 70 N.C. App. at 85, 318 S.E.2d at 886. Our courts have consistently held that "the 'driver of a borrowed car, like the owner of the car, has the power to control the contents of the car[,]'" and "power to control the automobile where [contraband] was found is sufficient, in and of itself, to give rise to the inference of knowledge and possession sufficient to go to the jury." *Id.* (quoting *State v. Glaze*, 24 N.C. App. 60, 64, 210 S.E.2d 124, 127 (1974)). Since there is no dispute in this case that defendant was the driver and sole occupant of the Buick on the evening of 8 May 2011, those facts were sufficient, in the light most favorable to the State, to permit an inference of defendant's constructive possession of the handgun in the trunk. *See id.* at 83-84, 85, 318 S.E.2d at 885, 886 (holding State presented substantial evidence of constructive possession of marijuana in car when State's evidence showed defendant was driver of car also occupied by two other men at time of stop and marijuana was located on and under rear floor mat of car, and defendant's evidence showed he borrowed car three days prior to stop and had custody of it until time of stop).

Moreover, the State's evidence showed defendant told officers, after being informed that he was charged with possession of a firearm by a felon, that "he learned his lesson last time" and this time he would plead guilty; there was mail in defendant's name in the passenger seat of the car; and defendant fled from the officers and physically struggled with them to avoid arrest, leading him to plead guilty to resisting a public officer. *See State v. Bagley*, 183 N.C. App. 514, 521, 644 S.E.2d 615, 620 (2007) ("[E]vidence of flight is admissible if offered for the purpose of showing defendant's guilty conscience as circumstantial evidence of guilt of the crime for which he is being tried . . . .").

Additionally, defendant pled guilty to possession of marijuana, and the State's evidence showed a marijuana smoking pipe was found in the back seat of the car in the same duffel bag that contained men's clothes in defendant's size; the digital scale showing marijuana residue in the trunk was in "close proximity" to the shiny silver handgun located in plain view; there were between 20 and 50 plastic bags in the center console of the Buick and those items are commonly used to package marijuana; marijuana residue was found on the rear floorboard of the car; and the handgun was a cheap "throw-away gun" commonly used by drug-dealers. There were few other items

in the trunk, and Ms. Hunter testified she had never before seen the digital scale. This evidence tended to show defendant was involved in drug transactions, put the digital scale in the trunk, and either personally put the gun in the trunk or was at least aware of its presence when driving the car on 8 May 2011.

We hold the State presented substantial evidence of defendant's constructive possession of the handgun in the trunk. Consequently, the trial court did not err in denying defendant's motion to dismiss the charge of possession of a firearm by a felon.

II

Defendant next contends that the indictment charging him as a habitual felon was fatally defective since the alleged date of the offense for one of the three predicate felony convictions differed from the date of offense shown on the prior judgment submitted to the trial court as proof of that conviction. Defendant argues that, as a result of the defective indictment, the trial court lacked subject matter jurisdiction over the habitual felon charge.

Defendant was indicted for being a habitual felon, which is defined as "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court . . . ." N.C. Gen. Stat. § 14-7.1 (2013). N.C. Gen.

Stat. § 14-7.3 (2013) provides that an indictment charging a defendant as a habitual felon "must set forth," among other things, "the date that prior felony offenses were committed."

Defendant's indictment for being a habitual felon provides in relevant part that defendant was convicted of the sale and delivery of marijuana in Onslow County on 31 October 1995 and that the date of offense was "05/31/1995." As a factual basis for defendant's guilty plea, the State presented the judgment for defendant's sale and delivery of marijuana conviction that provided the same information as defendant's habitual felon indictment, except that the date of offense was provided as "05-12-1995." Defendant's argument on appeal is based solely on this discrepancy.

In *State v. Taylor*, 203 N.C. App. 448, 453, 691 S.E.2d 755, 760 (2010), *cert. denied*, 366 N.C. 408, 736 S.E.2d 180 (2012), the defendant similarly argued that his indictment for being a habitual felon was fatally defective because the date of offense for a predicate felony alleged in his habitual felon indictment, "'12/8/1992,'" differed from the date of offense shown on the relevant judgment presented by the State at trial, "'12/18/92.'" The Court explained that "'the date alleged in the indictment is neither an essential nor a substantial fact as to the charge of habitual felon . . . .'" *Id.* at 454, 691 S.E.2d at 761 (quoting

*State v. Locklear*, 117 N.C. App. 255, 260, 450 S.E.2d 516, 519 (1994)). Instead, it is "'the fact that another felony was committed, not its specific date, which [i]s the essential question in the habitual felon indictment.'" *Id.* (quoting *Locklear*, 117 N.C. App. at 260, 450 S.E.2d at 519).

The habitual felon indictment in *Taylor* "provided notice of the three prior felonies being used to support the indictment, the dates the felonies were committed, the jurisdiction in which they were committed, the dates of convictions, the court in which the convictions took place, and the file numbers of the cases." *Id.* at 455, 691 S.E.2d at 761. Under those circumstances, the Court held that the habitual felon indictment was sufficient on its face to support the charged offense. *Id.*, 691 S.E.2d at 761-62.

Here, as in *Taylor*, the habitual felon indictment provided defendant notice of the three prior felonies supporting the indictment, the dates the felonies were committed, the jurisdiction in which they were committed, the dates of conviction, and the court in which the convictions took place. There can be no question that defendant had notice of the prior felonies alleged against him, since prior to entry of defendant's plea to being a habitual felon, defense counsel expressly stipulated to "the three convictions which are

identified in the [habitual felon] indictment," stating that they "[were], in fact, correct and do apply to [defendant]." Defense counsel based his stipulation on his assertion that he "[had] actually checked the judgments [himself]." Accordingly, "[d]espite the discrepancy regarding the date defendant committed the prior [relevant] offense, the habitual felon indictment . . . provided defendant with adequate notice of the prior felonies supporting the indictment in order for defendant to prepare a defense." *Id.* at 455, 691 S.E.2d at 761. The indictment, therefore, sufficiently charged defendant with being a habitual felon, and the trial court had subject matter jurisdiction over the charge.

### III

Defendant additionally argues that questions to his wife and mother on cross-examination attempted to elicit improper evidence regarding his criminal history. Defendant contends that the questions violated his rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution, as well as Rules 401 and 404 of the Rules of Evidence.

During cross-examination of defendant's wife, Ms. West, the following occurred:

Q. Ms. West, you said you and [defendant] have been married since 2000; is that right?

A. Yes.

Q. Okay. And have you shared a residence that entire time?

A. Off and on.

Q. Okay. And when it was off, what was happening?

A. When it was off?

Q. When you weren't sharing a residence, what was going on?

A. Just marital problems.

Q. Okay. And was there ever a time where your husband couldn't be in the marital residence with you?

A. Meaning?

Q. As in did he ever have to live or stay somewhere else other than for marital problems?

A. 2001 or '2, whenever the charges that you brought up earlier.

Q. Okay. And is that because he was in prison at that time?

A. Yes.

Q. Okay. Did he ever go to prison on any other occasions while you were married?

[DEFENSE COUNSEL]: Objection.

THE COURT: Sustained.

> Q.    (By [prosecutor]) Were there ever any other times when he was outside of the marital home?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: You need to confine yourself to the time of May of 2011 and thereabouts.

The cross-examination testimony regarding defendant's prison sentence during 2001 or 2002 appears to be a reference to defendant's sentence for his prior conviction of assault with a deadly weapon inflicting serious injury that served as the predicate felony for his charge of possession of a firearm by a felon.   During its case-in-chief, the State presented evidence of the judgment for that conviction.

In addition, the State cross-examined defendant's mother, Ms. Hunter, in relevant part as follows:

> Q.    Okay.   Ms. Hunter, had you ever known your son to have a handgun before?
>
> A.    No, ma'am.
>
> Q.    Okay.   What about in 2000, when he used one for the assault with a deadly weapon inflicting serious injury against someone?
>
> A.    What about it?
>
> Q.    Were you aware that he used a similar-caliber handgun in that case?
>
> A.    No, ma'am.   I never seen him with no gun.

The indictment underlying defendant's 2001 conviction of assault with a deadly weapon inflicting serious injury, also presented to the jury during the State's case-in-chief, alleged defendant committed the assault with a "22 handgun."

Defendant did not object to the challenged cross-examination of Ms. West on constitutional grounds and did not object to the challenged cross-examination of Ms. Hunter on any grounds. Generally, "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (2002). *See* N.C.R. App. P. 10(a)(1). Defendant does not assert that admission of the challenged testimony constituted plain error. Although defendant asks this Court to invoke Rule 2 of the Rules of Appellate Procedure in order to review the merits of his argument, we see no cause for invoking Rule 2 in order to "prevent manifest injustice to a party, or to expedite decision in the public interest" in this case.

We, therefore, do not address defendant's constitutional arguments as to cross-examination of either witness. Given defendant's failure to object on any grounds and failure to argue plain error, we also decline to address defendant's Rules 401 and 404 arguments with respect to Ms. Hunter.

To the extent defendant challenges on appeal the cross-examination of Ms. West prior to defendant's objections, he has not preserved his argument for appeal and has not argued plain error. Further, the trial court sustained both of defendant's objections during the relevant cross-examination of Ms. West, and Ms. West did not, therefore, answer the challenged questions. Defendant nonetheless argues that the questions themselves were sufficiently prejudicial to warrant a new trial.

Assuming the State's attempted cross-examination of Ms. West regarding times defendant was in prison other than as a result of his prior conviction for assault with a deadly weapon inflicting serious injury was improper, our Supreme Court "has held that the mere asking of a question, followed by a sustained objection, is not prejudicial to a defendant." *State v. Brewer*, 325 N.C. 550, 569-70, 386 S.E.2d 569, 580 (1989). Moreover, with respect to the possession of a firearm by a felon charge, the jury was properly shown that defendant had a prior felony conviction, and we have already addressed the substantial weight of evidence that tended to show defendant constructively possessed the handgun in the trunk.

With respect to the possession of drug paraphernalia charge, defendant pled guilty to possession of marijuana; defendant appeared to have been smoking marijuana immediately

prior to his encounter with the officers; the officers found a marijuana pipe in the Buick located in a duffel bag in the back seat that contained men's clothes in defendant's size and "men's grooming products"; there is no dispute that defendant was the driver and sole occupant of the car; defendant fled from the officers when they asked him about the marijuana; and Ms. Hunter denied having ever seen the digital scale located in the trunk that showed marijuana residue. Given this evidence, and the trial court's prompt sustaining of defendant's objections, defendant cannot show prejudice from any impropriety in the State's cross-examination of Ms. West.

IV

Finally, defendant contends that the trial court erred in calculating his sentence. Defendant first argues that the trial court, in determining defendant's prior record level, erroneously relied upon a prior conviction, which had been consolidated with another prior conviction that was used as a predicate felony for defendant's habitual felon conviction.

N.C. Gen. Stat. § 14-7.6 (2013) provides that "[i]n determining the prior record level, convictions used to establish a person's status as an habitual felon shall not be used." N.C. Gen. Stat. § 15A-1340.15(b) (2013) provides: "If an offender is convicted of more than one offense at the same time,

the court may consolidate the offenses for judgment and impose a single judgment for the consolidated offenses. The judgment shall contain a sentence disposition specified for the class of offense and prior record level of the most serious offense . . . ."

In this case, a single, consolidated judgment was entered against defendant in 2001 for separate convictions of robbery with a dangerous weapon and conspiring to commit robbery with a firearm. The two offenses were committed on the same date. The State used the conspiracy to commit robbery with a firearm conviction as a predicate felony for defendant's habitual felon charge. The prior record level worksheet prepared by the State, stipulated to by defendant, and apparently relied upon by the trial court in determining defendant's sentence, added six points for the robbery with a dangerous weapon conviction. Defendant contends that when his prior convictions for robbery with a dangerous weapon and conspiring to commit robbery with a firearm were consolidated for sentencing, those offenses "merged" such that it was improper to use one to support his habitual felon conviction and the other to add prior record level points.

This Court rejected defendant's precise argument in *State v. McCrae*, 124 N.C. App. 664, 478 S.E.2d 210 (1996). There, as

here, the defendant argued that "the trial court erred when it determined his prior record level . . . by assigning points for a prior conviction which was consolidated for judgment with a conviction already used to constitute defendant as an habitual felon." *Id.* This Court explained that, contrary to the defendant's argument, "[c]onsolidation of offenses for judgment means only that convictions are consolidated for the purpose of rendering judgment, each conviction still stands." *Id.* at 665, 478 S.E.2d at 211. *McCrae* controls our decision here, and we hold that the trial court did not err in assigning prior record level points for a conviction consolidated with a separate conviction used to indict defendant as a habitual felon.

Although defendant also argues that the trial court erred in assigning him a prior record level point based on a finding that "all the elements of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense or offenses were used in determining prior record level," N.C. Gen. Stat. § 15A-1340.14(b)(6) (2013), defendant concedes that any error was harmless. Consequently, we conclude defendant received a trial free from prejudicial error.

No error.

Judges BRYANT and CALABRIA concur.

Report per Rule 30(e).